UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TERRY LaCROIX, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:22-CV-193-JD-MGG |
| COOK, et al., | |
| Defendants. | |

OPINION AND ORDER

Terry LaCroix, a prisoner without a lawyer, is proceeding on a claim against two correctional officers at Indiana State Prison ("ISP"), Officers Gregory Cook and Kevin Shaia, for allegedly using excessive force against him on September 25, 2020, when they were escorting him to the medical unit. (ECF 13.) Defendants move for summary judgment on the ground that Mr. LaCroix did not exhaust his administrative remedies before filing suit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.[1] (ECF 23.) Mr. LaCroix has filed a response and supporting exhibits in opposition to the motion (ECF 34, 35), and Defendants have filed a reply (ECF 38). The matter is now ripe for adjudication.

Under Federal Rule of Civil Procedure 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In

---

[1] Defendant Shaia was identified and served after Defendant Cook filed his motion for summary judgment. Defendant Shaia has been granted leave to join in the motion. (ECF 51.)

deciding whether a genuine dispute of material fact exists, the court must "consider all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw all reasonable inferences from that evidence" in that party's favor. *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (citation omitted). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). Additionally, not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner. . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Lack of exhaustion is an affirmative defense that the defendant has the burden of pleading and proving. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The purpose of the exhaustion requirement is "to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).

The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. The exhaustion requirement is mandatory, and the court does not have discretion to excuse a prisoner from exhausting. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Nevertheless, inmates are only required to exhaust administrative remedies that are actually available. *Woodford*, 548 U.S. at 102. The availability of a remedy is not a matter of what appears on paper, but whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). When prison staff hinder an inmate's ability to use the grievance process, administrative remedies are not considered "available." *Id.*

The following facts are undisputed unless otherwise noted. At the time of this incident, ISP had a grievance policy through which inmates could grieve a variety of matters, including the actions of staff or other concerns related to the conditions of their confinement. (ECF 25-2.) Mr. LaCroix was aware of the grievance process and used it both before and after the September 2020 incident. (ECF 35 at 5; ECF 37-2 at 1; ECF 37-3.) The grievance process consists of three steps: (1) a formal grievance; (2) a written appeal to the Warden or his designee; and (3) a written appeal to the Indiana Department of Correction ("IDOC") Grievance Manager. (ECF 25-2 at 3.) The process

3

begins with the inmate filing a formal grievance no later than 10 business days from the date of the incident giving rise to the complaint or concern.[2] (*Id.* at 9.)

The record reflects that Mr. LaCroix filed a formal grievance about the September 2020 incident on April 25, 2021. (ECF 34-1 at 5.) It was rejected as untimely.[3] (*Id.* at 4.) There is some discretion in the grievance policy for the acceptance of a late grievance if there are "extenuating circumstances" that prevented the inmate from filing a timely grievance. (ECF 37 ¶ 39; ECF 25-2 at 14.) However, the grievance specialist did not find cause for a seven-month extension of the deadline in this instance, particularly because he was aware that Mr. LaCroix had filed a grievance about an unrelated matter in December 2020. (ECF 37 ¶ 39.) Based on the fact that Mr. LaCroix did not submit a timely grievance related to the incident giving rise to this lawsuit, Defendants argue that dismissal under 42 U.S.C. § 1997e(a) is warranted. (ECF 24, 38.)

Mr. LaCroix argues that the untimeliness of his grievance should be excused because he was having difficulties in the months following the September 2020 incident.

---

[2] In his response to the Defendants' statement of material facts, Mr. LaCroix "refutes" that the grievance policy required him to file a grievance within 10 days. However, he does not include a citation to evidence supporting such a dispute, and instead argues that the 10-day limitation is "unrealistic." (ECF 35 at 6.) His legal arguments do not create a factual dispute; furthermore, he acknowledges elsewhere in his filings that the grievance policy required him to file a grievance within 10 business days. (ECF 34-4 at 8.) The court deems admitted Defendants' proposed fact about the 10-day provision, which is a matter of public record. *See* IND. DEP'T OF CORR. POLICY & ADMIN. PROC., *Offender Grievance Process*, No. 00-02-301, § X (eff. Sept. 1, 2020).

[3] The grievance specialist initially attested that he could not locate any grievance from Mr. LaCroix about this incident. (ECF 25-1.) He explains in a subsequent filing that he only searched grievance records through December 31, 2020, which he deemed a reasonable period for a grievance to have been filed about the September 2020 incident. (ECF 37 ¶¶ 35-37.) After Mr. LaCroix submitted his response arguing that he did file a grievance about this incident, the grievance specialist broadened his search and located the April 2021 grievance that was rejected as untimely. (*Id.*) The court additionally notes that Mr. LaCroix appears to have resubmitted the same grievance in September 2021, a full year after the incident giving rise to the complaint. (ECF 34-1 at 5.) This resubmitted grievance was even later than the original. (ECF 37 ¶ 37.)

4

(ECF 34-2 at 2.) Specifically, he claims he was "suffering serious mental & emotional from my injuries . . . with my PTSD, anxiety, depression, difficulty sleeping, nervousness, [and] distress intolerance disorder." (*Id.*) Mr. LaCroix is correct that a grievance process is not considered available "to a person physically unable to pursue it." *Lanaghan v. Koch*, 902 F.3d 683, 689 (7th Cir. 2018). If an inmate is incapacitated during part or all of the grievance period, he must nevertheless file a grievance "as soon as it was reasonably possible for him to do so." *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011).

Medical records Mr. LaCroix submits in support of his incapacity argument reflect that he was brought to the infirmary by the Defendants on September 25, 2020, after being found unresponsive in his cell and showing signs of a drug overdose. (ECF 34-1 at 187-92.) He was given Narcan and observed in the infirmary for a few days. (*Id.*) In early October 2020, he underwent an x-ray of his left shoulder because of a "popping sensation and pain" allegedly caused by him falling on his shoulder during this incident. (*Id.* at 193.) The x-ray showed a "minimally displaced fracture" of his left shoulder. (ECF 34-1 at 194.) Another x-ray taken later in October 2020 showed the injury was "healing" and that there was "partial bony bridging without fracture or displacement." (*Id.* at 195.)

Mr. LaCroix does not state whether he is right or left-handed, and it is unclear from these limited records if the injury to his left shoulder would have prevented him from completing a grievance form. But even if the court were to presume that he was physically incapable of filing a formal grievance during September, October, or

5

November 2020 because of the arm injury and/or the emotional problems he cites (a rather generous assumption based on the record), the evidence is unequivocal that he was physically capable of filing a formal grievance as of December 11, 2020. That is the date he submitted a grievance about another matter.[4] (ECF 37-2.) In addition to that grievance, he was also capable of submitting written "request for interview" forms on December 4, 2020, January 31, 2021, and March 2, 2021, about unrelated matters. (ECF 34-1 at 10-11, 15.) However, he did not submit a formal grievance about the incident giving rise to the complaint until April 25, 2021.

Mr. LaCroix was required to file a grievance "as soon as it was reasonably possible for him to do so," and he has not shown that he complied with this requirement. *Hurst*, 634 F.3d at 412; *see also Gakuba v. Henderson*, No. 21-3205, 2022 WL 17436513, at *2 (7th Cir. Dec. 6, 2022) (rejecting prisoner's argument that he was physically incapable of using the grievance process because he "showed through his repeated filing of grievances at this time that he was physically able to pursue administrative remedies"). Therefore, the case must be dismissed under 42 U.S.C. § 1997e(a).

For these reasons, the motion for summary judgment (ECF 23) is GRANTED, and the case is DISMISSED WITHOUT PREJUDICE pursuant to 42 U.S.C. § 1997e(a). The clerk is DIRECTED to close this case.

---

[4] The December 2020 grievance pertained to an incident occurring on December 5, 2020, with a different correctional officer. (ECF 37-2 at 4.)

SO ORDERED on February 1, 2023

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT